**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Eric Collier,

Petitioner,

v.

Scott Fisher, Warden,
FCI Sandstone, MN,

Respondent.

---

Civ. No. 13-379 (JRT/JJK)

**REPORT AND RECOMMENDATION**

Eric Collier, Federal Correctional Institution – Sandstone, P.O. Box 1000, Sandstone, Minnesota, 55072, Petitioner, *pro se.*

Ann M. Bildtsen, Esq., Assistant United States Attorney, counsel for Respondent.

---

JEFFREY J. KEYES, United States Magistrate Judge

This matter is before the Court on the Petition of federal prisoner Eric Collier for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. He claims that he has been wrongly deprived of 27 days of "good-conduct time" ("GCT"), and that the Bureau of Prisons ("BOP"), is therefore intending to keep him in federal custody beyond his proper release date. Respondent has opposed the Petition, and both sides have briefed the issues presented in this case.

The case has been referred to this Court for Report and Recommendation under 28 U.S.C. § 636 and D. Minn. Loc. R. 72.1. For the reasons discussed below, this Court concludes that Petitioner's habeas corpus Petition should be denied, and this action should be dismissed with prejudice.

## BACKGROUND

In 2007, a federal criminal complaint was filed against Petitioner in the United States District for the Northern District of Illinois, charging him with two controlled substance offenses. He later pled guilty to one count of distributing more than 50 grams of crack cocaine. Petitioner originally was sentenced to 121 months in prison, to be followed by a five-year term of supervised release, but his prison term was later reduced to 120 months.[1]

The events giving rise to this action occurred in March 2012, while Petitioner was serving his federal prison sentence at the Federal Correctional Institution in Pekin, Illinois ("FCI-Pekin"). Petitioner was later transferred to the Federal Correctional Institution in Sandstone, Minnesota, and he remains incarcerated at that facility at this time. Petitioner's current projected release date is January 5, 2018. (Doc. No. 6, Decl. of Angela Buege ("Buege Decl.") ¶ 3.)

Petitioner's current habeas corpus Petition stems from a disciplinary matter that is described in an incident report dated March 25, 2012. (Doc. No. 5, Decl. of John Wolter ("Wolter Decl.") Attach. B.)[2] The incident report, which was

[1] The record from Petitioner's federal criminal case in the Northern District of Illinois, *United States v. Collier*, Crim. No. 1:07-cr-257, is available to this Court by means of the Case Management/Electronic Case Filing system ("CM/ECF"), which is maintained by the federal judiciary.

[2] John Wolter served as the Disciplinary Hearing Officer during the proceedings that resulted in Petitioner's loss of good-time credits, as discussed more fully below.

prepared by a correctional officer named Engelmann, describes an incident that occurred on March 2, 2012. (*Id.*) Engelmann described the incident as follows:

> On the above date at approximately 4:30 pm while conducting a routine shakedown of Nebraska Unit Cell F07-308 at the Camp, I found a sealed envelope behind the desk. Inside the envelope were two rolled pin cigarette looking items filled with a leafy substance. The cell is occupied by ______[[3]] and Collier 22417-424 [i.e., Petitioner]. Both inmates were placed in Special Housing pending investigation. On March 25, 2012 the lab report from Illinois State Police Forensic Laboratory found the contents of the two handroled [sic] cigarettes being synthetic marijuana.

(*Id.*)

The incident report accused Petitioner of violating a prison regulation identified as "Code 113," which prohibits possession of any drugs or alcohol. (*Id.*) A copy of the incident report was delivered to Petitioner on March 26, 2012 – one day after it was prepared.[4] (*Id.*) Petitioner denied the charges in the incident report, stating that he had "never seen it," and had "never been in contact with it." (*Id.*) On March 27, 2012, a Unit Disciplinary Committee formally recommended that the disciplinary charges against Petitioner should be heard and decided by a Disciplinary Hearing Officer ("DHO").

---

[3] The name of Petitioner's cellmate apparently was redacted from the copy of the incident report that was filed with the Court.

[4] The incident report indicates that the marijuana cigarettes were discovered on March 2, 2012, but Engelmann did not prepare the incident report until March 25, 2012. The incident report presumably was delayed because Engelmann was waiting for the laboratory report that confirmed the cigarettes contained "synthetic marijuana."

Petitioner was given a written notice that described his rights in connection with the DHO hearing. (*See id*.) He was advised that he had a right to be represented at the hearing by a staff member, and that he could call upon witnesses to present statements on his behalf. (*Id*.) Petitioner elected to be represented by a staff member named Johnson. (*Id*.) He also asked that a witness named Gellner be allowed to provide evidence showing that inmates had been told to clean out their desks sometime before the synthetic marijuana was found on Petitioner's desk. (*Id*.)

The DHO hearing was conducted by John Wolter on Thursday, March 29, 2012. (Wolter Decl., Attach. C, at 1.) According to DHO Wolter's post-hearing report, Petitioner denied the charges against him, and stated:

> 'I had no aware[ness] it was there it could never have been there, someone dropped it down there. I don't do it so I had no reason to possess it. Tuesday we was told to clean out the desks, we moved the desk to the hall, we brought it back in Friday morning. I'm trying to make it clear to you that it was in a common area.'

(*Id*.)

The DHO summarized the information provided by Petitioner's staff Representative, Johnson, as follows:

> Ms. Johnson advised that she reviewed the incident report, met with the inmate [i.e., Petitioner] prior to this hearing, acknowledged fulfilling her duties as a staff representative, and stated that the inmate's due process right had been afforded. Ms. Johnson did add that the desks were cleaned out because they were going to be replaced. She wanted to add that the items were located in a common area where any inmate would have access to hide objects.

(*Id*.)

The witness requested by Petitioner, Gellner, submitted a written statement that was considered by the DHO. The witness stated:

> Although I do not recall the specific date, I conducted a town hall [i.e., a unit meeting] in each of the Nebraska Unit alleys informing them that the desks were being replaced, and that the inmates needed to remove all of their items because the old desks were going to be hauled away with any items still remaining in the drawers. I conducted a town hall with the Kansas Unit inmates telling them the same information during their community meeting.

(*Id*., Addendum.)

At the conclusion of the DHO hearing, the DHO determined that Petitioner had committed the act charged in the incident report – i.e., he possessed drugs (synthetic marijuana) in violated of Code 113. (*Id*. at 1.) The DHO specifically determined that "during a routine search of your cell, [staff] found in the common area behind the desk in an envelope, two rolled pin cigarette looking items filled with a leafy substance," which was later found to be synthetic marijuana. (*Id*. at 2.) Having determined that Petitioner was guilty of the charged disciplinary offense, the DHO imposed a punishment that included a forfeiture of 27 days of GCT.[5] (*Id*.)

Petitioner attempted to appeal the DHO's decision, but his appeal was rejected because he did not submit all of the information required to perfect his

---

[5] The DHO also imposed other disciplinary sanctions involving a suspended term of segregated confinement and visitation restrictions.

appeal. Although Petitioner tried to cure the deficiencies of his original appeal as quickly as possible, his renewed appeal was summarily rejected due to untimeliness. Thereafter, Petitioner continued to seek relief through the BOP's administrative remedies, but his subsequent challenges to the DHO decision were rejected due to the untimeliness of his initial appeal.

Petitioner filed his current habeas corpus Petition on February 15, 2013. He is claiming that the DHO's decision violated his federal constitutional rights because 27 days of GCT were taken from him without due process. That claim must be denied, for the reasons discussed below.

## DISCUSSION

### I. Exhaustion of Administrative Remedies

It is well settled that federal prisoners normally must exhaust their available administrative remedies before seeking federal habeas corpus relief under 28 U.S.C. § 2241. *United States v. Chappel*, 208 F.3d 1069, 1069-70 (8th Cir. 2000) (*per curiam*); *Kendrick v. Carlson*, 995 F.2d 1440, 1447 (8th Cir. 1993); *Leighnor v. Turner*, 884 F.2d 385, 387 (8th Cir. 1989); *Willis v. Ciccone*, 506 F.2d 1011 (8th Cir. 1974); *United States v. Sithithongtham*, 11 F. App'x. 657, 658 (8th Cir. 2001) (*per curiam*) (unpublished opinion). In this case, however, Petitioner contends that he should be excused from the exhaustion of administrative remedies requirement because he made every possible effort to pursue administrative relief in a timely manner, but the BOP unreasonably refused to

consider his claims on the merits. Although Respondent has cited the exhaustion of administrative remedies requirement, Respondent does not actually contend that this action should be summarily dismissed based on Petitioner's failure to exhaust his administrative remedies. (*See* Doc. No. 4, Respt's Resp. 9, n. 5.)

It does appear to this Court that Petitioner did everything he could to exhaust his administrative remedies, and his administrative grievances and appeals were deemed untimely through no fault of his own. Moreover, Respondent appears to be content to have Petitioner's habeas corpus claims decided on the merits. Therefore, in this particular case, Petitioner will be excused from the exhaustion of administrative remedies requirement, and the Court will address his claims on the merits. *See Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) ("[J]udicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated."), *cert. denied*, 528 U.S. 846 (1999).

**II. Petitioner's Due Process Claim**

Title 18 of the United States Code, section 3624(b)(1) allows a federal prisoner to earn up to 54 days per year of credit toward his sentence for GCT. However, the statute also provides that GCT can be forfeited or disallowed if the prisoner violates prison rules and regulations.

Petitioner claims that he has a constitutionally protected liberty interest in his GCT credit, and that the DHO wrongly deprived him of 27 days of GCT

without affording him due process. He is seeking a writ of habeas corpus that would expunge the DHO's determination that he was guilty of a Code 113 violation, and restore his 27 days of lost GCT.

Petitioner does indeed have a constitutionally protected liberty interest in his GCT, and he cannot be deprived of GCT without being afforded "the minimum requirements of procedural due process appropriate for the circumstances." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). However, it is well settled that a prisoner facing a loss of GCT is not entitled to "the full panoply" of procedural safeguards that attend a criminal prosecution. *Id*. at 556. In fact, a prisoner who is facing a loss of GCT is not even entitled to as much procedural protection as a prisoner who is facing the revocation of his parole or supervised release. *Id*. at 561-62.

To satisfy the constitutional requirement of due process, a prison disciplinary action resulting in a loss of GCT must satisfy only the very simple and abridged procedural requirements prescribed by *Wolff*. According to *Wolff*, a prisoner is entitled to receive only "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563-67); *see also Espinoza v. Peterson*, 283

F.3d 949, 951-52 (8th Cir. 2002), *cert. denied*, 537 U.S. 870 (2002); *Allen v. Reese*, 52 F. App'x 7, 8 (8th Cir. 2002) (unpublished opinion), *cert. denied*, 540 U.S. 849 (2003). Due process also requires that a prisoner be given some advance notice of the prison's rules and regulations, which describes the type of conduct that might cause him to lose GCT. *See Meis v. Gunter*, 906 F.2d 364, 367 (8th Cir. 1990) (stating that "obvious problems of due process arise" if "[t]here has been no fair notice of what is prohibited"), *cert. denied*, 498 U.S. 1028 (1991).

Finally, due process requires that there must be "some evidence" supporting a guilty decision on a disciplinary charge brought against a prisoner. *Hill*, 472 U.S. at 454; *see also Ragan v. Lynch*, 113 F.3d 875, 876 (8th Cir. 1997) ("When inmates are entitled to due process before being disciplined, they must receive: (1) advance written notice of the charges; (2) an opportunity to present evidence in their defense; (3) a written statement by the fact finder of the reasons for the action; and (4) a decision supported by some evidence in the record."). "Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context." *Hill*, 472 U.S. at 456 (citations omitted).

The applicable due process standard is satisfied –

> [I]f 'there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . .' *United States* ex rel*. Vajtauer v. Commissioner of Immigration*, [273 U.S. 103, 106

> (1927)]. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Id*. at 455-56. *Hill* holds that the findings of a prison disciplinary official cannot be overturned in federal court even if the supporting evidence "might be characterized as meager," or wholly circumstantial. *Id.* at 457. As long as there is at least "some evidence" of guilt, and the disciplinary action is not wholly arbitrary, the requirements of due process are met.

Here, Petitioner does not contend that he was denied fair notice of the applicable regulations, nor does he contend that he was denied fair notice of the disciplinary charges brought against him. Moreover, the record clearly shows that Petitioner was given (a) a hearing on the charges, (b) an opportunity to present evidence in support of his defense to the charges, and (c) a written explanation of the reasons why he was found guilty of the charges. Thus, the only contested issue in this case is whether the DHO's decision on the charges was supported by "some evidence" showing that Petitioner was guilty of a Code 113 violation.

**III. Sufficiency of the Evidence**

Petitioner contends that there was not enough evidence to find him guilty of the Code 113 violation, because the contraband at issue in this case – i.e., the synthetic marijuana – was found on a desk in a common area outside of his cell.

He argues that because the desk was outside of his cell, the synthetic marijuana cigarettes could have been placed on the desk by anyone. Petitioner further contends that the DHO's decision is predicated on the DHO's erroneous determination that the desk was *inside* his cell when the contraband was discovered. According to Petitioner, there is no evidence to support the DHO's determination that the desk was inside his cell when the contraband was discovered, and thus the DHO's decision does not satisfy even the minimal "some evidence" standard prescribed by *Hill*.

Petitioner argues that Respondent's defense to his habeas petition "is based on a fallacy," namely that "the contraband was discovered within his cell," but in fact, "[a] detailed examination of the evidence . . . reveals that the desk where the marijuana was discovered was located outside of the cells in the *common area* as they were in the process of being replaced." (Doc. No. 9, Pet'r's Reply 1-2 (emphasis in original).) To support this argument, Petitioner cites the evidence furnished by Gellner, the witness that Petitioner requested, and Johnson, Petitioner's staff representative. Petitioner points out that Gellner informed the DHO that the inmates in Petitioner's unit of the prison were told that their desks were being replaced, and they "needed to remove all of their items because the old desks were going to be hauled away." Petitioner also relies on Johnson's testimony that the desks "were cleaned out because they were going to be replaced" and that "the items were located in a common area where any

inmate would have access to hide objects."[6] The evidence furnished by Gellner and Johnson purportedly establishes "the critical fact of the location of the desk," namely "that the desk were [sic] located in the common area and *not in the cell*." (*Id.* at 2 (emphasis in original).)

The gist of Petitioner's argument is that the DHO's decision rests entirely on the supposition that the synthetic marijuana cigarettes were discovered on a desk located *inside of his cell*. But according to Petitioner, all of the evidence establishes, incontrovertibly, that the desk actually was *outside of his cell* when the contraband was found. Petitioner concludes that because the contraband actually was found in "a common area" outside of his cell, there is no evidence to support the DHO's decision that he violated Code 113. The Court rejects this argument, because there is evidence that would have allowed the DHO to conclude that Petitioner's desk was inside his cell when the contraband was found.

The DHO has acknowledged that the inmates' desks in Petitioner's unit were, at some point, "set out in the hallway to be removed," just as indicated by Gellner's and Johnson's statements. (Wolter Decl. ¶ 10.) However, the DHO has explained that ultimately "[t]he desks were not removed and the inmates in [Petitioner's] unit placed their desks back into their cubical[s]." (*Id*.) In other

---

[6] Gellner's and Johnson's entire statements are quoted and cited at pp. 4-5, *supra*.

words, the DHO accepted Gellner's and Johnson's statements showing that the desks were cleaned out and moved from the inmates' cells into a common hallway area; but the DHO understood that the desks were later moved back into the inmates' cells. If that occurred, then Gellner's and Johnson's statements could have been accepted by the DHO, without contradicting his determination that "[t]he synthetic marijuana was found behind the desk *in [Petitioner's] cell*." (*Id*. (emphasis added).)

Moreover, there is evidence suggesting that Petitioner's desk was back inside his cell when the synthetic marijuana cigarettes were found. The incident report itself, which apparently was prepared by the person who actually found the synthetic marijuana cigarettes, not Gellner or Johnson, indicates that those cigarettes were found "while conducting a routine shakedown" of Petitioner's cell. According to the incident report, the cigarettes were found on Friday, March 2, 2012, at approximately 4:30 p.m. (Wolter Decl., Attach. B.) The DHO's report indicates that Petitioner himself confirmed that "Tuesday we was told to clean out the desks, we moved the desk to the hall, *we brought it back in Friday morning*." (Wolter Decl., Attach. C, at 1 (emphasis added).)

Thus, it would have been entirely reasonable for the DHO to conclude that (a) sometime prior to Friday, March 2, 2012, the inmates in Petitioner's unit cleaned out their desks and moved their desks out of their cells and into a hallway; (b) sometime later, apparently the morning of Friday, March 2, 2012,

those inmates – including Petitioner – moved their desks back into their cells;[7] (c) when Petitioner's cell was searched at about 4:30 p.m. on Friday, March 2, 2012, his desk was back in his cell; and (d) when the synthetic marijuana cigarettes were found on the desk, the desk was inside the cell – not in the hallway outside of the cell. Such reasoning would have been fully supported by the evidence before the DHO. Given the plausibility of such reasoning, this Court rejects Petitioner's contention that there was no evidence supporting the DHO's determination that the synthetic marijuana cigarettes were found inside his cell.[8]

If the DHO determined that the synthetic marijuana cigarettes were found inside Petitioner's cell, which certainly appears to be the case, then the DHO's ultimate determination of Petitioner's guilt is readily sustainable. Under BOP regulations, every inmate is responsible for ensuring that his cell is free of

---

[7] Petitioner's statement (as recorded by the DHO) does not specify which Friday morning the desks were moved back into the cells, so they could have been moved on some other Friday before March 2, 2012; but if that is what occurred, then Petitioner's desk must have been in his cell for a longer period of time, at least a week or possibly longer, before the contraband was discovered.

[8] This Court is not ignoring Johnson's somewhat ambiguous statement that "the items were located in a common area where any inmate would have access to hide objects." (Wolter Decl., Attach. C, at 1.) Johnson apparently meant that there was some period of time when Petitioner's desk was located in a common area hallway outside of his cell, and during that time another inmate could have hidden the synthetic marijuana cigarettes on Petitioner's desk. Johnson's statement does not explicitly state that Petitioner's desk was outside of his cell *when the contraband was found*, and her statement does not necessarily undermine the DHO's conclusion that Petitioner's desk was back in his cell when the contraband was found. Johnson's statement certainly does not prove that the contraband did not belong to Petitioner.

contraband.[9] Therefore, if contraband is found in an inmate's cell, he can be found guilty of possessing the contraband, under the theory of "collective culpability." The Eighth Circuit has accepted the theory of "collective culpability," meaning that "contraband found in a shared area" of a prison can constitute "'some evidence' to support sanctions in prison discipline cases." *Flowers v. Anderson*, 661 F.3d 977, 980 (8th Cir. 2011). "Courts that have considered this question have uniformly held that the discovery of contraband in a shared cell constitutes 'some evidence' of possession sufficient to uphold a prison disciplinary sanction against each inmate in the cell, including depriving that inmate of his or her liberty interest in good time credits." *Denny v. Schultz*, 708 F.3d 140, 145 (3d Cir. 2013).

In *Denny*, the Third Circuit Court of Appeals explained that –

> In a shared cell, all parts of the cell are equally accessible to each prisoner housed in the cell. Thus, each individual prisoner is responsible for keeping the entire cell free from contraband. Because each prisoner in a shared cell has an affirmative responsibility to keep the entire cell, and all other space accessible from within the cell, free from contraband, it follows that any contraband found within the cell is constructively possessed by each of the inmates housed in that cell. Thus, the mere discovery of contraband in a shared cell constitutes 'some evidence' that each

---

[9] In *Flowers v. Anderson*, 661 F.3d 977, 979 (8th Cir. 2011), the court of appeals cited 28 C.F.R. § 541.12 (2009), which was described as a "regulation, entitled 'Inmate rights and responsibilities,' [which] states that among an inmate's responsibilities is 'to keep your area free of contraband.'" Although § 541.12 no longer appears in Title 28 of the Code of Federal Regulations, the language quoted in *Flowers* is still included in the BOP's Program Statement [PS] 5270.09, Appendix C.

prisoner in that cell possessed the contraband.

*Id.* at 146.

As discussed above, there is "some evidence" supporting the DHO's determination that "synthetic marijuana was found behind the desk in [Petitioner's] cell." (Wolter Decl. ¶ 10.) That evidence includes (1) the statement of Engelmann – the person who found the contraband, and prepared the incident report, and (2) Petitioner's own statement, as set forth in the DHO report, indicating that sometime after his desk was moved out of his cell, he "brought it back in." This evidence is not contradicted by Gellner's and Johnson's statements, which indicate that the inmates in Petitioner's unit were ordered to clean out their desks, and that Petitioner's desk was therefore moved into a "common area" outside of his cell where it was accessible to inmates for some unspecified period of time. Because there is at least some evidence supporting the DHO's determination that the contraband was found in Petitioner's cell, it necessarily follows, by application of the collective-culpability theory, that there is some evidence supporting the DHO's ultimate conclusion that Petitioner was guilty of possessing contraband in violation of Code 113.[10]

It bears emphasizing that this Court need not make (and has not made) an

---

[10] This Court notes that Petitioner's cellmate also was found guilty of violating Code 113, presumably based on the same collective-culpability theory that was applied to Petitioner. (*See* Wolter Decl. ¶ 10 ("I found that both inmates were responsible for maintaining a contraband-free cell.").)

independent *de novo* determination of whether Petitioner's desk was inside or outside of his cell when the contraband at issue was discovered. In order to resolve Petitioner's current due process claim, the Court is only required to determine whether there is some evidence to support the DHO's determination that the contraband at issue was found in Petitioner's desk in his cell. The Court finds only that the "some evidence" standard is met.

Finally, even if the evidence irrefutably established that Petitioner's desk was in a common area outside of his cell when the synthetic marijuana was discovered, Petitioner's current due process claim might still fail. In *Flowers*, two federal prisoners were found guilty of possessing contraband that was found in a common area that was shared by eight inmates. The court of appeals rejected the inmates' argument that their disciplinary sanctions should be vacated because contraband was "found *outside* of the area for which they were responsible." 661 F.3d at 981 (emphasis in original). The Court upheld the sanctions because there was "'some evidence' that staff members discovered weapons *in a common area*" for which the inmates "shared responsibility." *Id*. (emphasis added).

*Flowers* suggests that Petitioner could have been found guilty of possessing contraband even if his desk had been located in a common area shared with other inmates (besides his cellmate) when the contraband was discovered. It is unclear how many inmates shared the common area in which

Plaintiff's desk was located while it was moved outside of his cell. However, under the collective-culpability theory approved in *Flowers*, if the common area outside of Petitioner's cell was shared by a limited number of inmates, then Petitioner could be held responsible for contraband found in that common area outside of his cell.

## CONCLUSION

For the reasons discussed above, this Court rejects Petitioner's contention that he was deprived of GCT without being afforded due process. He was provided all of the procedural protections prescribed by *Wolff*, and the evidence of his guilt satisfied the minimal "some evidence" standard prescribed by *Hill*. This Court finds, in particular, that there was some evidence supporting the DHO's determination that synthetic marijuana was found on a desk inside Petitioner's cell. Under the collective-culpability theory approved by *Flowers*, that constitutes some evidence that Petitioner violated Code 113. Moreover, based on *Flowers*, Petitioner's loss of GCT could be affirmable even if the synthetic marijuana was discovered in a common area outside of his cell.

Because the DHO's disciplinary ruling is supported by at least "some evidence," Petitioner's due process claim is unsustainable. This Court therefore recommends that Petitioner's habeas corpus Petition be denied, and that this action be dismissed with prejudice.

## RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 by a Person in Federal Custody (Doc. No. 1), be **DENIED**; and

2. This action be **DISMISSED WITH PREJUDICE**.

Date: June 17 , 2013

s/ Jeffrey J. Keyes
JEFFREY J. KEYES
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **July 1, 2013**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within **fourteen** days after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.